**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CHRISTOPHER WELLER, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | No. 05-cv-2758 |
| | : | |
| CHERYL RANSOM-GARNER, | : | |
| Commissioner, Philadelphia Dept. | : | |
| of Human Services, et al, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM AND ORDER**

**Joyner, J.**                                          **June 25, 2008**


Presently before the Court are Defendants' Motions for
Summary Judgment (Doc. Nos. 51, 52) and all responses thereto.
For the reasons set forth below, the Court GRANTS Defendants'
Motions.


BACKGROUND

Plaintiff Christopher Weller was born on May 15, 1985 to
Pearl and James Moon, his biological parents.  When he was only a
few months old, Plaintiff was placed into the foster care system,
along with his three siblings.  Mr. Weller was initially placed
into the custody of the Philadelphia Department of Health and

1

Human Services (DHS) on a "temporary" basis, and DHS contracted with an outside agency called "CONCERN" to oversee Plaintiff and his siblings while he remained in foster care.  Plaintiff and his siblings were all placed in the foster home of Carolee and William Weller, and although each of the other Moon children eventually returned to their biological home, Plaintiff remained with the Wellers.

On January, 13 1989, Judge Esther Sylvester signed a Dependency Review Order indicating that the goal for Plaintiff changed to adoption from return to his biological family, although Plaintiff remained committed to DHS custody. Plaintiff's status did not change until April 2, 1990, at which time Judge Sylvester issued an Order indicating that DHS would decide whether to proceed with the adoption goal.  The next mention of adoption in the record appears in a Dependency Review Order dated January 9, 1991, in which Judge Sylvester noted that the Wellers, despite continuing to express interest in adoption, were now separated[1] and thus the judge expressed uncertainty as to the goal at that time.

---

[1] Plaintiff urges in his response that although the Wellers had been separated for a time in 1989, by 1991 they were back together.  Plaintiff alleges - though he provides no record support for this - that Judge Sylvester was misled as to the Wellers' marital status by Defendants Jones and the Defenders Association of Philadelphia.  At some point, Ms. Jones, a Child Advocate ("CA") for the Defender Association, had been assigned to represent Plaintiff and act as CA on his behalf.  Neither party, however, has clarified exactly when Ms. Jones undertook this representation.

Subsequently, in early 1991 the Wellers moved to Tennessee and, allegedly with prior consent, took Plaintiff with them. However, the Wellers were ordered to return to Philadelphia for a May 30, 1991, hearing in front of Judge Sylvester to determine Plaintiff's residence and goal status.[2]  After that hearing, Judge Sylvester determined that Plaintiff should remain in Pennsylvania and begin daytime visitation with his biological parents.  Plaintiff began those visits soon afterwards, and then began overnight visitations with his biological parents, though DHS retained custody over him.  Within weeks thereafter, however, a report was filed that Plaintiff had experienced sexual abuse at some point during his visits with the Moons.[3]  As a result, Judge Sylvester held a hearing on June 26, 1991 to determine Plaintiff's status.  Plaintiff alleges that Dr. Sexton was available to testify at this hearing, but was not called as a witness and her report was merely noted as being on the record by Judge Sylvester.  After the hearing, Judge Sylvester ruled that Plaintiff would remain in DHS custody and be sent to live with his maternal aunt, with periodic reports by DHS as to how the child adjusted to that environment. In accordance with continuous

---

[2] Plaintiff claims that the Wellers believed they were returning to Philadelphia to continue the adoption process; however, he does not dispute that this hearing took place and that Judge Sylvester ruled on Plaintiff's residence and goal status.

[3] None of the parties specifies when the abuse supposedly occurred.  The expert report of Carlin Knight submitted by Plaintiff, however, indicates that Plaintiff reported being sexually abused on June 12, 1991, to his therapist, Dr. Eileen Sexton.  According to the report produced by Plaintiff, this abuse occurred sometime during the visits between June 6 and that date.

3

orders by Judge Sylvester, Plaintiff remained in that situation
for approximately six months, after which time he returned to
live with the Wellers.  During that six month period, however,
Plaintiff alleges that all four Defendants resisted adoption
efforts by the Moons in various hearings and representations to
the Family Court, claiming to have the primary goal of reuniting
the child with his siblings and biological parents.  In any
event, Judge Sylvester ordered that Plaintiff be returned to the
Wellers in Tennessee in January, 1992, and he has remained with
them since that time.

*This Lawsuit*

On May 4, 2005, Plaintiff began this action by filing a Writ
of Summons in the Court of Common Pleas for Philadelphia County,
and on June 10, 2005, the matter was removed to federal court.
Plaintiff subsequently filed his Amended Complaint in this Court
on October 24, 2005, alleging violations by Defendants of 42
U.S.C. § 1983 and common law negligence, among other loosely-
specified torts.  More specifically, Plaintiff alleges that as a
result of the abuse suffered by the Moons when he was returned to
them on a trial basis in 1991, he developed post-traumatic stress
disorder and has experienced "physical and emotional pain and
suffering" that he claims to be "permanent."  Plaintiff further
alleges that he "does not have a driver's license or job and has

4

shown no interest in college," despite completing high school. According to Plaintiff, these injuries were caused by the alleged mishandling of his case that led to his brief return to the Moons.  As a result of these injuries, Plaintiff requests damages for medical expenses, pain and suffering, and loss of earnings capacity.  On February 6, 2008 and February 7, 2008, all four Defendants filed the instant Motions for Summary Judgment pursuant to Fed. R. Civ. P. 54.

<u>STANDARD OF REVIEW</u>

It is recognized that the underlying purpose of summary judgment is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense.  <u>Goodman v. Mead Johnson & Co.</u>, 534 F.2d 566, 573 (3d Cir. 1976).  Summary judgment is proper "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  <u>Fed. R. Civ. P.</u> 56(c).  An issue is genuine only if there is sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law.  <u>Kaucher v. County of Bucks</u>, 456 F.3d 418, 423 (3d Cir. 2006), citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  If the non-moving party bears the burden of

persuasion at trial, "the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden." Id., quoting Wetzel v. Tucker, 139 F.3d 380, 383 n. 2 (3d Cir. 1998). In conducting our review, we view the record in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. See Bowers v. Nat'l Collegiate Athletic Ass'n, 475 F.3d 524, 535 (3d Cir. 2007). However, there must be more than a "mere scintilla" of evidence in support of the non-moving party's position to survive the summary judgment stage. Anderson, 477 U.S. at 252.

DISCUSSION

**I.  Claims Against Cheryl Ransom-Garner and the City of Philadelphia**

  **A.  Section 1983**

In Count I of his Amended Complaint, Plaintiff alleges that Defendant Cheryl Ransom-Garner, as the head of the Department of Human Services, and the City of Philadelphia violated his constitutional rights by employing a "standard practice" of "blindly favoring" the biological parents of a child over "other parenting options which were in the best interest of the child." According to Plaintiff, he is entitled to damages under 42 U.S.C.

6

§ 1983 because these Defendants violated his constitutional rights by favoring his return to the biological family and ignoring other evidence indicating that being with the Moons would not be in his best interests. Plaintiff further alleges that his rights were violated because DHS, an otherwise "competent youth organization," did not have a policy of attempting to secure adoption or "permanent placement" for children after "a certain period of time" where efforts to reunite the biological family have failed.

### 1.   Defendant Cheryl Ransom-Garner

As an initial matter, we will treat the suit against Ms. Ransom-Garner as a suit against the City of Philadelphia for purposes of this action. For Ms. Ransom-Garner to be found liable in her individual capacity as a supervisory official, Plaintiff would have to show that she "participated in violating [his] rights, or that [she] directed others to violate them, or that she . . . had knowledge of and acquiesced in [her] subordinates' violations." Baker v. Monroe Twp., 50 F.3d 1186, 1191 (3d Cir. 1995). Plaintiff can also establish supervisory liability under Section 1983 by showing that as a supervisor, Ms. Ransom-Garner "tolerated past or ongoing misbehavior." Id. at 1191 n. 3. Plaintiff has not pointed the Court to any evidence

7

whatsoever that would establish individual liability for Ms. Ransom-Garner under these standards.  In fact, at their depositions Plaintiff and his adoptive mother, Carolee Weller, were unable to articulate any personal involvement of Ms. Ransom-Garner in the events that led to this suit.  Accordingly, because there is no evidentiary basis for finding Ms. Ransom-Garner liable in her individual capacity, we will consider the claims against her to be in her official capacity only.

The Supreme Court has advised that suits against agency heads in their "official capacities" are to be treated as equivalent to suits brought against the public office itself. Kentucky v. Graham, 473 U.S. 159, 165-66 (1985).  This is because "[o]fficial capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent." Id. (citations omitted).  Accordingly, we will treat the suit against Ms. Ransom-Garner in her official capacity as a suit against the City of Philadelphia.  See Monell v. Dept. of Soc. Servs. of City of New York, 436 U.S. 658, 690-91 (1978) (deeming a suit against head of New York's Department of Social Services in his official capacity to be a suit against the city itself).

8

## 2.   Defendant City of Philadelphia

Under <u>Monell</u> and its progeny, a municipality can only be
liable under § 1983 if it actually caused the complained-of
violation.   Therefore, a municipality such as the City of
Philadelphia may be liable under § 1983 only if it had a policy
or well-settled custom which caused a deprivation of
constitutional rights.   <u>Monell</u>, 436 U.S. at 694.   As the Third
Circuit has made clear, "absent the conscious decision or
deliberate indifference of some natural person, a municipality,
as an abstract entity, cannot be deemed in violation by virtue of
a policy, a custom, or a failure to train."   <u>Simmons v. City of
Phila.</u>, 947 F.2d 1042, 1063 (3d Cir. 1991).   Thus, a plaintiff
claiming a municipal violation of 1983 "must both identify
officials with ultimate policymaking authority in the area in
question and adduce scienter-like evidence . . . with respect to
them."[4]   <u>Id.</u> at 1062.   Furthermore, a plaintiff seeking to

---

[4] Plaintiff's reliance on <u>Wendy H. v. City of Philadelphia</u>, 849 F. Supp.
367 (E.D. Pa. 1994) to support his argument that the standard is actually a
"professional judgment" standard is misguided.   In <u>Wendy H.</u>, this Court found
that an *individual* case worker should be held to a "professional judgment"
standard in § 1983 cases involving alleged neglect by child welfare agencies.
<u>Id.</u> at 373-74.   The outcome of using such a standard would be that with
respect to *individual* defendant officials, evidence of misconduct "which did
not give them actual knowledge of harm or risk, but instead allowed them to
avoid such knowledge" would be allowed to impact on liability.   <u>Id.</u> at 375.
The Court made clear in <u>Wendy H.</u>, however, that this does not change the
standard for *municipalities* or municipal *agencies* being sued under § 1983; in
fact, in the very same opinion the City of Philadelphia was dismissed because
there was no evidence of any "person or group of persons . . . responsible for
[an] allegedly offending policy."   <u>Id.</u> at 376-77.   Unlike the plaintiff in
<u>Wendy H.</u>, Plaintiff here has not named any case workers or other individual

establish municipal liability must show that the policy was the "moving force" behind the constitutional injury; that is, he must "show a causal link between the execution of the policy and the injury suffered." <u>Losch v. Borough of Parkesburg</u>, 736 F.2d 903, 910 (3d Cir. 1984).

Under this standard, Plaintiff's § 1983 claim cannot survive summary judgment.  Although Plaintiff does make bald allegations that there were policies in place that "directly contradicted" their duty to protect the best interests of the child, he has submitted no evidence whatsoever to support those allegations. Plaintiff's response points to no evidence whatsoever that bears on the crucial questions of who the officials were that adopted the supposedly offending policies or what their intent was in adopting those policies (i.e., evidence of scienter).  In fact, Plaintiff has not even attempted to name a single individual involved in those policymaking decisions outside of Ms. Ransom-Garner, and we reiterate that not one shred of evidence has been put forth to indicate her involvement.  Finally, Plaintiff has pointed us to no evidence at all that would allow a reasonable juror to find a causal link between the challenged policies and the "injuries" being allegedly suffered by Plaintiff fifteen

---

defendants as having violated § 1983 by their individual actions.  Thus, the "professional judgment" standard does not apply to his § 1983 claims.

years after the events in question here.  Accordingly, because
there is no evidence upon which a reasonable juror could find in
Plaintiff's favor as to his § 1983 claims against the City of
Philadelphia, we must GRANT the motion for summary judgment on
this claim.


### B.   Other Tort Claims

Counts II and III of Plaintiff's Amended Complaint also
include broad allegations that the Department of Human Services
and the City of Philadelphia brought about the purported harm to
the Plaintiff through their negligent handling of his case and
through other "intentional actions and inactions" that were
against his best interests.  Plaintiff does not explain what
legal theory these claims are predicated on, but in any event the
City of Philadelphia and DHS are immune from suit based on such
tort claims.  See 42 Pa. Cons. Stat. § 8541 ("[N]o local agency
shall be liable for any damages on account of any injury to a
person or property caused by any act of the local agency or an
employee thereof or any other person.").  Accordingly, Counts II
and III of Plaintiff's Amended Complaint must also be dismissed.

II.  **Malpractice Claim against Valerie Jones and the Defender Association of Philadelphia**

In Count IV of his Complaint, Plaintiff also alleges that Defendants Valerie Jones and the Defender Association of Philadelphia breached their duties to him as child advocates by recommending his return to his biological parents in 1991.  In particular, Plaintiff alleges that these Defendants withheld relevant expert report information from Judge Sylvester and failed to properly object at the May 30, 1991, hearing after which Judge Sylvester determined that Plaintiff should resume visitation with his biological parents.

To establish a claim of legal malpractice under Pennsylvania law, a plaintiff must demonstrate: (1) employment of the attorney or another basis for a duty owed to the plaintiff; (2) the failure of the attorney to exercise ordinary skill and knowledge; and (3) such failure was the proximate cause of damage to the plaintiff. Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985).  As the Pennsylvania Supreme Court has explained, an essential element of a legal malpractice claim is "proof of actual loss rather than a breach of a professional duty causing only nominal damages, speculative harm or the threat of future harm." Kituskie v. Corbman, 714 A.2d 275, 281 (Pa. 1998).  Thus, with respect to the third element, causation is satisfied by showing

12

that "but for" the attorney's conduct, the plaintiff client would
have prevailed in the legal action in question.  See id.; Duke &
Co. v. Anderson, 418 A.2d 613, 618 (Pa. Super. 1980).  Showing a
mere "increased risk of harm" will not suffice for proving
causation in a legal malpractice case.  See Spillman v. Wallen,
1996 WL 379553, at *13 (E.D. Pa. June 28, 1996) (citing Gans v.
Gray, 612 F. Supp. at 613-14).

Defendants argue that Plaintiff has not sufficiently
established the proximate cause element of his legal malpractice
claim to survive summary judgment.  We agree.  The only evidence
produced by Plaintiff in support of his claim is a report by
Carlin Knight, an attorney with a background in social work.  Ms.
Knight's report contains a lengthy discussion of her opinion as
to how Ms. Jones and the Defender Association failed to fulfill
their duties to Plaintiff as child advocates.  However, at no
point does she explain how or why Judge Sylvester would have come
to a different conclusion had the Defendants acted differently.
The only part of the report that even approaches the beginning of
such an explanation comes when Ms. Knight states that she "is at
a loss" as to how Judge Sylvester could have ordered resumed
visitation with the Moons "without the concurrence by DHS and the
child advocate."  At no time is this statement further elaborated
on, and Plaintiff offers no further evidence - in Ms. Knight's

13

report or elsewhere - to support his bald assertion that Judge
Sylvester would not have ordered day-time visits with the child's
biological parents had Ms. Jones acted differently in her
representation.  As this Court has explained, "[s]peculation,
conclusory allegations, and mere denials are insufficient to
raise genuine issues of material fact."  Boykins v. Lucent
Techs., Inc., 78 F. Supp. 2d 402, 407 (E.D. Pa. 2000).  The
evidence produced by Plaintiff in response to Defendant's Motion
for Summary Judgment does not rise above this level; thus, we
find that there is no evidence upon which a reasonable juror
could conclude that Plaintiff's injuries were proximately caused
by the professional failings of Ms. Jones and the Defender
Association.  Accordingly, these Defendants' Motion for Summary
Judgment must be GRANTED and Count IV of Plaintiff's Complaint
must be dismissed.


**IV.   Conclusion**

     Plaintiff has offered no evidence whatsoever to show any
personal involvement by Cheryl Ransom-Garner, Commissioner of
DHS, in his case, and accordingly the suit against her is
identical to the suit against the City of Philadelphia.  However,
Plaintiff has also produced no evidence regarding the policies or
customs that supposedly led to the injuries claimed here, or the

14

officials who enacted those policies.  Furthermore, the City of Philadelphia is immune from suits based on alleged tort law violations.  Accordingly, the Motion of Cheryl Ransom-Garner and the City of Philadelphia for Summary Judgment is GRANTED and all claims against them are dismissed.  Finally, Plaintiff has not offered more than a "mere scintilla" of evidence upon which a reasonable juror could conclude that Judge Sylvester would not have ordered temporary visitation with the Moons if Ms. Jones and the Defender Association had represented him differently.  Accordingly, we must also GRANT the Motion for Summary Judgment of those Defendants and dismiss his remaining claim of legal malpractice.

An order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

```
CHRISTOPHER WELLER,                 :
                                    :
                Plaintiff,          :    CIVIL ACTION
                                    :
        v.                          :    No. 05-cv-2758
                                    :
CHERYL RANSOM-GARNER,               :
Commissioner, Philadelphia Dept.    :
of Human Services, et al,           :
                                    :
                Defendants.         :
```

<u>ORDER</u>

AND NOW, this  25th  day of June, 2008, upon consideration of Defendants' Motions for Summary Judgment (Doc. Nos. 51, 52), and all responses thereto, it is hereby ORDERED that the Motions are GRANTED.  Judgment as a matter of law is ENTERED in favor of Defendants Cheryl-Ransom Garner, the City of Philadelphia, Valerie Jones, and the Defender Association of Philadelphia, and all of Plaintiff's claims against all Defendants are hereby DISMISSED.

BY THE COURT:

s/J. Curtis Joyner
J. CURTIS JOYNER, J.